UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| JUAN EMORY HARRIS | CIVIL ACTION |
| VERSUS | 22-897-SDD-RLB |
| STATE OF LOUISIANA THROUGH THE LOUISIANA DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS | |

**RULING**

This matter comes before the Court on the *Motion to Dismiss*[1] filed by Defendant the State of Louisiana through the Louisiana Department of Public Safety and Corrections ("DPSC" or "Defendant"). Plaintiff, Lieutenant Juan Emory Harris ("Lt. Harris" or "Plaintiff") filed an *Opposition*.[2] For the following reasons, Defendant's Motion will be granted.

**I.   FACTS AND PROCEDURAL BACKGROUND**

Plaintiff pleads the following facts: Plaintiff, a Black male,[3] was an employee of the Louisiana Department of Public Safety & Corrections ("DPSC").[4] He served as a Lieutenant at the Elayn Hunt Correctional Center (the "EHCC"), which is under the "authority and control" of DPSC.[5] He worked alongside Captain Ryan Taylor ("Capt. Taylor"), a White male, and Colonel Brandy Landry ("Colonel Landry"), a White female.[6] Plaintiff alleges that despite the chain of command at the EHCC each of them were "subordinate[s] only to the Warden."[7] But, each of their ranks "[are] subject to [sic]

---

[1] Rec. Doc. 26.
[2] Rec. Doc. 28.
[3] Plaintiff failed to plead facts regarding his protected status in his original complaint. In the operative Amended Complaint, he alleged for the first time that he is a Black male. Rec. Doc. 24, pp. 2, 8.
[4] Rec. Doc. 24, p. 1.
[5] *Id* at p. 2.
[6] *Id* at pp. 2–3.
[7] *Id* at p. 3.

oversight generally."[8] The following provides the ranks in order of ascending oversight: Lieutenant, Captain, Lieutenant Colonel, and Colonel. As Colonel, Landry held "supervisory capacity" over both Capt. Taylor and Lt. Harris.[9] Specifically, she investigated "incidents involving inmates and employees" and made "recommendations to the Warden for discipline as [a] result of those investigations."[10]

On August 17, 2021, Lt. Harris and Capt. Taylor were serving as corrections' officers at EHCC. The two officers came "in contact with an inmate" after the "inmate allegedly dashed a liquid substance on EHCC employees."[11] This resulted in Lt. Harris and Capt. Taylor engaging at approximately the same time with this inmate and using force against the inmate by spraying chemical agent on the inmate.[12] Because of this use of force, Lt. Harris and Capt. Taylor had to prepare Unusual Occurrence Reports ("UORs").[13] These UORs were given to Colonel Landry who thereafter prepared an investigative report on August 18, 2021 and a supplemental report on September 16, 2021. Colonel Landry had a "duty to accurately investigate" this incident with the inmate and give these reports to the Warden.[14]

The EHCC provides a number of policies and procedures concerning correctional officers' use of force on inmates. Plaintiff alleges that he and Capt. Taylor were trained on these policies and procedures.[15] Institutional policy 300-A-0-1 provides the information that is necessary to include in a UOR. The correctional officer must provide "(1) [a]

---

[8] *Id.*
[9] *Id.*
[10] *Id.*
[11] *Id.*
[12] *Id.*
[13] *Id.*
[14] *Id* at p. 4.
[15] *Id.*

description of the events leading to the use of force, (2) an accurate and precise description of the incident and reasons for employing force, (3) a detailed description of the force used, (4) an accurate and precise description of any device used in the incident including any chemical agent used, (5) a list of participants and witnesses" and (6) the supervisors that were notified.[16] Plaintiff alleges that while he abided by these protocols, such as by listing the name of the chemical agent used, detailing the force used, listing the supervisors notified, and stating that he turned his body camera on prior to engaging with the inmate, Capt. Taylor failed to provide these same details.[17]

But, when Colonel Landry provided the supplemental report to the Warden, there was a second UOR written by Capt. Taylor. This second UOR cured much of the deficiencies from the first UOR, such as listing the name of the chemical agent and noting that Capt. Taylor did not use his body camera.[18] Additionally, the second UOR corrected punctual and grammatical errors in the first UOR and overall provided "additional details."[19] But, Plaintiff was not provided an opportunity to provide a second UOR. Plaintiff was ultimately terminated, but Capt. Taylor was not. Plaintiff's UOR "was the basis of a suggestion by Landry to terminate [him]."[20]

Plaintiff alleges that "Colonel Landry either assisted Taylor with documenting his UOR inserted into [the] supplemental investigative report, or she (Colonel Landry) made the changes to be complaint" with UOR procedures and policies.[21] Plaintiff claims if Colonel Landry participated in these acts, this constitutes falsification of a public

---

[16] *Id*.
[17] *Id* at p. 5.
[18] *Id*.
[19] *Id*.
[20] *Id* at p. 8.
[21] *Id* at p. 6.

document.[22] Moreover, he claims that EHCC treated he and Capt. Taylor differently because (1) he was not afforded the opportunity to provide additional information or have his statement changed like Capt. Taylor and (2) Colonel Landry did not suggest terminating Capt. Taylor even though Capt. Taylor used contraband on the inmate after the inmate was sprayed with the chemical agent. Plaintiff claims this was a clear violation of EHCC's policy and should have "mandated his termination of employment."[23]

Plaintiff brought suit against the State of Louisiana, through DPSC, and Warden Kirk Guerin, Colonel Landry, and Capt. Taylor for retaliation and discrimination based on his race in violation of Title VII and the Louisiana Employment Discrimination Law (the "LEDL").[24] Plaintiff also brought intentional infliction of emotion distress ("IIED") claims against these Defendants.[25] The Court dismissed Plaintiff's claims against Warden Guerin, Colonel Landry, and Capt. Taylor with prejudice.[26] Additionally, the Court dismissed Plaintiff's IIED claims with prejudice.[27] Plaintiff's retaliation and discrimination claims were dismissed without prejudice, and he was afforded an opportunity to cure his pleadings' deficiencies only as to these claims.[28] Plaintiff thereafter amended his complaint.[29] DPSC now moves to dismiss these remaining claims and Plaintiff opposes.

---

[22] *Id*.
[23] *Id* at p. 9.
[24] Rec. Doc. 1-1.
[25] *Id*.
[26] Rec. Doc. 23, p. 15.
[27] *Id*.
[28] *Id*.
[29] Rec. Doc. 24.

## II.    LAW AND ANALYSIS

### A.  Preliminary Matters

Defendant moves to dismiss, *inter alia*, Plaintiff's retaliation claims under Title VII and the LEDL. Although Plaintiff filed a memorandum in opposition, Plaintiff failed to oppose the dismissal of these claims. This Court has held on numerous occasions that the "failure to brief an argument in the district court waives that argument in that court,"[30] and the "failure to oppose the substance of an argument is a waiver and dismissal is proper on these grounds alone."[31] Accordingly, pursuant to Middle District Local Rule 7(f) and applicable jurisprudence, these claims are deemed abandoned, and shall be dismissed with prejudice.

Plaintiff also asserts several new allegations in his Opposition pertaining to the appeal of his termination and the chemical agent alleged to have been used by Capt. Taylor and Plaintiff.[32] A party cannot amend pleading through opposition memoranda. The law is well-settled that arguments in a brief are not a substitute for properly pleaded allegations: "it is axiomatic that a complaint cannot be amended by briefs in opposition to a motion to dismiss."[33] Because these allegations were not included in the operative Amended Complaint, they are not properly before the Court and will not be considered.[34]

---

[30] *Williams v. Louisiana State Univ.*, 2022 WL 17330106, at *6  (M.D. La. Nov. 29, 2022), *appeal dismissed sub nom.*, *Williams v. Palermo*, 2023 WL 4231618 (5th Cir. Feb. 13, 2023) (citations omitted).
[31] *JMF Med., LLC v. Team Health, LLC*, 490 F. Supp. 3d 947, 981 (M.D. La. 2020) (citing *Bourgeois v. Walmart Inc.*, 2020 WL 1161928, at *3 (M.D. La. 2020)).
[32] Rec. Doc. 28, pp. 6–8.
[33] *Becnel v. St. Charles Par. Sheriff's Off.*, 2015 WL 5665060, at *1 n.3 (E.D. La. Sept. 24, 2015) (internal brackets omitted) (quoting *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 761 F. Supp. 2d 504, 566 (S.D. Tex. 2011)). Because a Rule 12(b)(6) motion tasks the Court with "assess[ing] the legal sufficiency of the complaint," the Court does not consider allegations that appear for the first time in plaintiffs' briefing. *Servicios Azucareros de Venezuela, C.A. v. John Deere Thibodeaux, Inc.*, 702 F.3d 794, 806 (5th Cir. 2012).
[34] *LeBlanc v. DISA Glob. Sols., Inc.*, 2020 WL 8363123, at *5 (M.D. La. Feb. 19, 2020).

Finally, in his Amended Complaint, Plaintiff added EHCC and Secretary James M. Leblanc as defendants. However, this Court's Order permitted Plaintiff to cure his pleadings' deficiencies, it did not authorize Plaintiff to add new parties.[35] Plaintiff did not seek to extend the deadline provided in the Court's Scheduling Order,[36] nor did he seek leave to amend his complaint a second time to add new defendants. Thus, these parties were not properly joined. Because Plaintiff exceeded the scope of this court-authorized amendment, the Court may "strike the offending portions of the pleading under Rule 12(f)."[37] Accordingly, all references to these new defendants are hereby stricken from Plaintiff's Amended Complaint as exceeding the scope of amendment authorized by the Court. Claims against these improperly named defendants shall be dismissed with prejudice.

### B. Rule 12(b)(6) Motion to Dismiss Standard

When deciding a Rule 12(b)(6) motion to dismiss, "[t]he 'court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"[38] The Court may consider "the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."[39] "To

---

[35] This Court held, "Plaintiff shall be given a final opportunity to amend his complaint to cure the deficiencies addressed herein. Plaintiff is granted leave to amend only as to the claims dismissed WITHOUT prejudice." Rec. Doc. 23, p. 15.
[36] The deadline to amend pleadings was April 3, 2023. Rec. Doc. 18.
[37] See Tubwell v. Specialized Loan Servicing, LLC, 2018 WL 11417569, at *2 (N.D. Miss. June 4, 2018) (striking newly added defendants when the plaintiff was only authorized to cure his pleading deficiencies) (quoting Gerritsen v. Warner Bros. Entm't Inc., 112 F.Supp.3d 1011, 1048 (C.D. Cal. 2015)).
[38] In re Katrina Canal Breaches Litig., 495 F.3d 191, 205 (5th Cir. 2007) (quoting Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit, 369 F.3d 464, 467 (5th Cir. 2004)).
[39] Wolcott v. Sebelius, 635 F.3d 757, 763 (5th Cir. 2011).

survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'"[40]

In *Twombly*, the United States Supreme Court set forth the basic criteria necessary for a complaint to survive a Rule 12(b)(6) motion to dismiss. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[41] A complaint is also insufficient if it merely "tenders 'naked assertions' devoid of 'further factual enhancement.'"[42] However, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[43] In order to satisfy the plausibility standard, the plaintiff must show "more than a sheer possibility that a defendant has acted unlawfully."[44] "Furthermore, while the court must accept well-pleaded facts as true, it will not 'strain to find inferences favorable to the plaintiff.'"[45] On a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation."[46]

### C. Discrimination under Title VII and LEDL

Title VII of the Civil Rights Act of 1964 prohibits employers from discriminating against employees on the basis of race.[47] "To establish a *prima facie* case of racial

---

[40] *In re Katrina Canal Breaches Litig.*, 495 F.3d at 205 (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).
[41] *Twombly*, 550 U.S. at 555 (2007) (internal citations and brackets omitted).
[42] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations and brackets omitted).
[43] *Id*.
[44] *Id*.
[45] *Taha v. William Marsh Rice Univ.*, 2012 WL 1576099, at *2 (S.D. Tex. 2012) (quoting *Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*, 365 F.3d 353, 361 (5th Cir. 2004)).
[46] *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).
[47] 42 U.S.C. § 2000e-2(a)(1).

discrimination in employment, an employee must demonstrate that (1) he is a member of a protected class, (2) he was qualified for the position at issue, (3) he was the subject of an adverse employment action, and (4) he was treated less favorably because of his membership in that protected class than were other similarly situated employees who were not members of the protected class, under nearly identical circumstances."[48]

The "similarly situated" prong of a discrimination claim "requires a Title VII claimant to identify at least one coworker outside of his protected class who was treated more favorably 'under nearly identical circumstances.'"[49] Although the Fifth Circuit has cautioned district courts to refrain from "scrutinizing whether [plaintiff's] fellow employees were really 'similarly situated'" on a motion to dismiss, a plaintiff must allege sufficient facts to "nudge their claims across the line from conceivable to plausible."[50]

> [The Fifth Circuit] require[s] that an employee who proffers a fellow employee as a comparator demonstrate that the employment actions at issue were taken under nearly identical circumstances. The employment actions being compared will be deemed to have been taken under nearly identical circumstances when the employees being compared held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories. And, critically, the plaintiff's conduct that drew the adverse employment decision must have been nearly identical to that of the proffered comparator who allegedly drew dissimilar employment decisions.[51]

---

[48] *Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009) (internal citations omitted); *see also DeCorte v. Jordan*, 497 F.3d 433, 437 (5th Cir. 2007) ("Claims of racial discrimination in employment, pursuant to. . .the Louisiana Employment Discrimination Law, are governed by the same analysis as that employed for such claims under Title VII.") (internal citations omitted); *Stewart v. Daigle Indus., LLC*, 2023 WL 322885, at *1 (M.D. La. Jan. 19, 2023) (defining the LEDL as "Title VII's state law equivalent").
[49] *Alkhawaldeh v. Dow Chem. Co.*, 851 F.3d 422, 426 (5th Cir. 2017) (quoting *Lee*, 574 F.3d at 259).
[50] *Cicalese v. Univ. of Texas Med. Branch*, 924 F.3d 762, 768 (5th Cir. 2019) (quoting *Twombly*, 550 U.S. at 547) (internal quotations omitted); *see also Papa v. Cap. One Nat'l Ass'n*, 2022 WL 906402, at *3 (W.D. La. Mar. 28, 2022) (internal citation omitted).
[51] *Lee,* 574 F.3d at 260 (internal citations and quotations omitted).

Failure to identify such an employee, or "comparator," "alone justifies dismissal of [a plaintiff's] Title VII claim[,]" and "[i]f no such comparator exists, the plaintiff cannot establish a *prima facie* case."[52]

Defendant moves to dismiss Plaintiff's Title VII claim because Plaintiff "fail[ed] to meet the fourth prong" of his Title VII claim.[53] Defendant moves to dismiss the LEDL claim "on the grounds that Plaintiff failed to plead those claims 'with the requisite level of specificity.'"[54] Defendant argues that Plaintiff only "provides conclusory allegations to support his race claims."[55] LEDL claims are subject to the same analysis employed for Title VII claims.[56] Thus, Defendant's arguments that seek to have the Court consider these claims separately is unpersuasive. Regardless, the Court finds that the facts plead are insufficient to satisfy Plaintiff's burden.

Plaintiff alleges that he is African American, had 20 years of experience as a DPSC employee, and was terminated.[57] These facts are sufficient to meet the first three prongs of his Title VII race discrimination and LEDL claims.

Regarding the fourth prong, Defendant argues that "it is unclear if the 'similarly situated person' is Colonel Landry or Ryan Taylor."[58] Plaintiff alleges Capt. Taylor was allowed to change or amend his UOR to comply with the EHCC's policy whereas Plaintiff

---

[52] *Saketkoo v. Tulane Univ. Sch. of Med.*, 510 F. Supp. 3d 376, 386 (E.D. La. 2020) (internal quotations omitted), aff'd sub nom. *Saketkoo v. Administrators of Tulane Educ. Fund*, 31 F.4th 990 (5th Cir. 2022); *see also Saketkoo*, 31 F.4th at 998 n. 3 ("*Lee* sets out the requirements for conducting the comparator analysis. Although it does not affirmatively state that such an analysis is required to satisfy the fourth prong and make a prima facie case, our court has since interpreted *Lee* this way."); *Noakes v. Dep't of Homeland Sec.*, 2022 WL 11435959, at *10 (E.D. La. Oct. 18, 2022).
[53] Rec. Doc. 26-1, p. 8.
[54] *Id* at p. 10.
[55] *Id*.
[56] *See DeCorte*, 497 F.3d at 437.
[57] Rec, Doc. 24, p. 8.
[58] Rec. Doc. 26-1, p. 8.

was not afforded this opportunity.[59] He claims that his UOR formed "the basis of a suggestion by Landry to terminate [him]."[60] Moreover, Plaintiff alleges that Colonel Landry did not suggest terminating Capt. Taylor even though Capt. Taylor used contraband on an inmate after the inmate was sprayed with a chemical agent.[61] Plaintiff claims that Capt. Taylor had "an equal if not greater violation of a clear policy of EHCC" but it was not suggested that he be terminated.[62] Defendant's argument is unavailing as it is abundantly clear the comparator Plaintiff sets forth is Capt. Taylor.

Plaintiff's claims nevertheless fail because Plaintiff and Capt. Taylor are not similarly situated as a matter of law. Plaintiff alleges that (1) Colonel Landry holds "supervisory capacity of both Harris and Taylor that includes investigating incidents involving inmates and employees" and making recommendations to the Warden for discipline at the conclusion of these investigations; (2) he and Capt. Taylor were both trained on the use of force policies and procedures; (3) he and Capt. Taylor were both corrections' officers at EHCC who engaged in contact with the same inmate; (4) he and Capt. Taylor both sprayed a chemical agent on the inmate and thereafter had to prepare UORs; and (5) he and Capt. Taylor were "subordinates" only to the Warden.[63] But, Plaintiff also alleges that he holds the rank of Lieutenant and Taylor holds the rank of Captain.[64] Plaintiff and his comparator must be "nearly identical"[65] under the circumstances and as

---

[59] Rec. Doc. 24, p. 8.
[60] *Id*.
[61] *Id* at pp. 8–9.
[62] *Id* at p. 9.
[63] Rec. Doc. 24, pp. 3–4.
[64] *Id* at p. 2.
[65] *West v. City of Houston*, 960 F.3d 736, 740 (5th Cir. 2020) (internal citation omitted); *Willis v. W. Power Sports, Inc*., 2024 WL 448354, at *2 (5th Cir. Feb. 6, 2024) (internal citation omitted); *Moore v. Univ. Mississippi Med. Ctr*., 719 F. App'x 381, 385–86 (5th Cir. 2018) (internal citation omitted).

a matter of law, employees of different rank or status cannot be similarly situated.[66] Thus, the Court finds that Plaintiff has failed to sufficiently plead facts to establish his *prima facie* case. In conclusion, Defendant's 12(b)(6) motion on Plaintiff's Title VII discrimination and LEDL claims is granted.

## III.   CONCLUSION

Accordingly, for the foregoing reasons, Defendant's Motion to Dismiss[67] is hereby **GRANTED**. The parties, EHCC and Secretary James M. Leblanc, were not properly joined and therefore all claims against them are hereby dismissed with prejudice. Plaintiff's retaliation claims under Title VII and the LEDL have been abandoned and are hereby dismissed with prejudice. Plaintiff's discrimination claims under Title VII and the LEDL are also dismissed with prejudice. The Pre-Trial Conference set for May 13, 2025 and the Jury Trial set to begin June 9, 2025 are hereby canceled.[68]

**IT IS SO ORDERED.**

Signed in Baton Rouge, Louisiana, on this  26th  Day, April, 2024.

_____
**SHELLY D. DICK**
**CHIEF DISTRICT JUDGE**
**MIDDLE DISTRICT OF LOUISIANA**

---

[66] *See Kendall v. Block*, 821 F.2d 1142, 1147 (5th Cir. 1987) (finding that the plaintiff was not similar to his white comparators in part because they were at higher levels of superiority than the plaintiff); *Laborde v. City of Houston*, 31 F. App'x 151, at *1 (5th Cir. 2001) (finding plaintiff and his comparator held different positions and were on different pay scales as a reason why they were not similarly situated); *Sacchetti v. Optiv Sec., Inc.*, 819 F. App'x 251, 254 (5th Cir. 2020) (finding that the lower court correctly held employees were not similarly situated in part because the employees held different positions with different levels of responsibility).
[67] Rec. Doc. 26.
[68] Rec. Doc. 39.